We'll turn now to the day calendar. The first case is Pang Lin v. Sessions. Thank you. May it please the Court, my name is Troy Nader Maslami and I'm here for the petitioner, Pang Lin. Pang Lin was a 28-year-old male at the time of the individual hearing before the immigration judge was a citizen of China and had nine years of education. He had filed for asylum claiming that he had attended an underground Christian church in 2012, that in 2013 public security officials raided the church, one person attending the church resisted, someone else was beaten, and then he was falsely accused of hitting an official and himself was beaten with a baton. Mr. Lin was able to escape the church and fled to a relative's home, sought treatment for the beating, stayed at the relative's home for 22 days, and while at the relative's home learned that officials had gone to his own home, so he left for the United States and then he attended church in New York. During the course of the interview... He admittedly made a number of inconsistent statements. Yes, but one of the things... Why isn't that a substantial basis for the agency? Before we get to that, the immigration judge did make a statement that he generally found Lin's testimony regarding what had happened to him in China to be consistent with his application and to be generally plausible. Almost the entire source of the credibility determination in this case was based upon a Department of Homeland Security question during cross-examination where they had asked him whether he had ever left China before 2013 and he denied having done that. And then the next question was why did the department's records say that you were actually in Cuba and Mexico in 2009? There was an objection to that question as assuming facts not in evidence, the immigration judge overruled it and then he subsequently admitted that he had been in Mexico and Cuba in 2009. Well, there were also inconsistent statements about whether this was his first passport or a second passport and he said that he had answered inconsistently when called on the inconsistency because he didn't think there would be a record of the first passport. And I think that also contributed to the immigration judge's adverse credibility finding. Was he compelled to find otherwise? Judge, that issue regarding that, he did give an explanation for that saying that he thought that the officials told him that when he applied for the second one, the first one no longer existed. But one of the main points I wanted to make here and I believe I made in my brief was that the immigration judge specifically found, and it seems like the lion's share of the credibility determination is based on whether that cut off an area of inquiry. And then the immigration judge made a number of statements saying that he believed that Mr. Lynn's answers in this regard were intended to cut off inquiry as to whether he had attempted to enter the United States before. But if that was the area of inquiry, in the end it didn't wind up cutting off the inquiry. Everyone asked him a number of questions about that and I don't think it enlightened anyone at all as to whether that was a trip to the United States or not. Mr. Lynn said that he traveled for tourism and the entire basis of the immigration judge's suspicion that it was a prior smuggling trip to the United States appears to be based on speculation. There's no record evidence whatsoever that says that that was a prior smuggling trip to the United States or that it was anything other than what Lynn said it was. I don't think that the immigration judge made any negative comments about his testimony regarding tourism. It's just purely based upon speculation. And that is my primary concern for that. There's also, of course, Mr. Lynn's testimony that the officials had told him that once he applied for a second passport, the records of the first one had been deleted and that it didn't exist. My understanding of this He also said, I forgot my first passport. That's correct. Yes. I do believe that under the circuit's case law unless the court is compelled to accept that explanation that they don't necessarily have to. But my primary concern here is that the judge uses that as a source of saying he cut off an area of inquiry as to whether he had been smuggled previously. And that appears to be a large portion of the adverse credibility determination in this case is that that's why the immigration judge didn't believe him was because he believed it cut off an area of inquiry. Now, I did want to make some other notes regarding this in that the Respondent's Brief makes a lot of issues regarding the objection to the question. And note that pretty much the entire adverse credibility determination in this case flows from that one question about what the Department's records said about him having been in China before and that that whole question basically turned the entire tide in the case. I had mentioned to the Board that the objection should have been sustained. I cited, I think it was Federal Rule of Evidence 611E, which the Respondent made kind of a large deal about in their brief saying that they were implying that might be the wrong rule. But if you look at the Board's decision at the administrative record on page 4, they're saying the entire rules of evidence are not binding in immigration court. And the Respondent says that as well. So it really, which number it was wouldn't have mattered because they're saying the entire rules don't apply. So whether I correctly cited 611A or I should have cited another rule, it wouldn't have mattered what rule I cited. What's the takeaway from that? That they don't apply? They're saying, yeah. That's the law, isn't it? Right. But as far as whether... So why are you wasting your time on this? Because that leads to the next issue is that the Board had said as long as the questions are relevant and fundamentally fair. And that led to my argument that's here before the Court regarding due process. What if the question had just been, have you ever left China? And he said, no. And then they said, are you sure about that? And then he said, well, let me finish. And then he said, well, yeah. Actually, I had been to Cuba before. I mean, it would be one thing if he continued to deny it and somehow he was found to not be credible because a document was never offered. But he admits to the lie. So I don't understand the due process issue. He admits to the lie. You're not asserting that it was bad faith. I mean, you can't assert it was bad faith because he admitted himself that he had lied. But that answer doesn't come until he's asked about material that's inside Department of Records which he's not allowed to see, never introduced in evidence. But that wasn't the cause of him deciding to tell the truth? He does not state the prior trip until that question happens. I have a hard time getting my hands around your due process. I can understand the federal rules of evidence argument, but the rules don't apply. You and I have just agreed to that. But I'm having a hard time getting my hands around the due process claim when he admits to it. If he continued to press the denial and somehow the government had gotten the benefit without offering a document that they had or had misrepresented an official record that they didn't have and lied about it, then I'm totally with you. But he admits. I don't get it. But we have no idea what that record says. It was never introduced in evidence. So then your client either lied the first time when he said he hadn't been or he lied the second time when he said he did. But his testimony then became inconsistent, didn't it? Right. But what if the objection had been sustained? What if the judge said, no, I'm not allowing you to ask that question? Would he have all of a sudden answered? The question is, is that question alone a violation of due process? And I'm not so certain you're right about that. Well, the entire case depends on the results of what happens to that question. Because the immigration judge says the rest of his testimony. You're tying your star right to that. So if you're wrong, you lose. I think looking at this case, it's fair to say that because the immigration judge said that his testimony regarding what happened to him in China was generally consistent and plausible. And then makes, bases the decision based upon the number of trips that he took and what he testified about it. The administrative law judge was confronted with two answers which were totally inconsistent. Was he not? Yes, he was, Judge. All right. Do you have some time for rebuttal? Okay. I'm sorry. Thank you. May it please the Court. Chris Buchanan for the United States Government. Your Honor, this Court is right to point to the inconsistencies that were presented before the immigration judge in this case because they are blatant. They are material. What better practice to have been to mark a document that the government was going to refer to that it thought was inconsistent? I mean, I understand that the federal rules of evidence don't apply, but the due process does have some place in an administrative proceeding where the person stays in the United States or not on an asylum claim. Wouldn't the better process have been mark the document, then ask the question, and if the answer was no, that was the only time I ever went, then impeach the individual with the official record? Your Honor, that certainly makes sense. It's kind of sharp practice the other way, isn't it? It's kind of like not saying what's behind door number one. Your Honor, in my view, no. Once he admitted the contents of the record, then the document became irrelevant. It's been a long time since I tried a case. It's been 22 years since I was a trial judge, but I never saw a question asked on an inconsistent statement where the document from which the inconsistency arose was not marked as a court exhibit prior to the question being asked. Now, if that happened in Monroe County Supreme Court, it sure as hell should happen in an immigration court, don't you think? Your Honor, I certainly agree that that would be the better practice. Thank you. I don't know that it's necessarily required under the particular facts of this case, because that question and all of the questions thereafter was one admission after another about his concealed travel in Mexico in 2009. Your colleague, your opponent has, because once he admits it, he's either lying once or lying later. Your Honor, that's exactly right. That's exactly right. And under Xie Xuelin, neither of those versions is compelled. Presented with a record that juxtaposes two separate versions of events, travel only one time from China in 2013, as opposed to travel actually in 2009 ostensibly for terrorism, and then again. Didn't the administrative law judge seem to extrapolate from that inconsistency the fact that he somehow thought that perhaps Mr. Lin had stayed in Mexico up until the time he entered the United States? Your Honor, I respectfully disagree. There was no finding of fact by the immigration judge about motive one way or another. And this is a little bit like the facts in the Zeman case, where the immigration judge was presented with two duplicate photographs. One was an identity document and the other was a passport record. They're supposed to be six years apart. They could not have been, because they were exactly the same. And the finding in Zeman was that where the immigration judge just concludes that one or the other of them is fraudulent, he doesn't need to pick which one. And so, too, here, whether he traveled in 2013 for religious to flee religious persecution, which was his first assertion, or in fact, whether he traveled in 2009 for tourism and then again in 2009 for tourism, the two can't be reconciled. And the immigration judge is not under a requirement to discern which of those is true. It is enough under Zeman for the immigration judge to simply conclude that because they are irreconcilable and because no persuasive explanation was tendered, one or the other of them is false, and that supports the adverse credibility determination. The respondent would take a little bit of time to point out that Petitioner misapprehends the significance of the concealment of his 2009 travel. And so there's a lot of reference here about cutting off a line of inquiry. The immigration judge's decision reflects the immigration judge's struggle with the convoluted travel sequence. The immigration judge in the record at page 53 states that he likes to give the benefit of the doubt to young applicants, such as the one before him. And then two pages later on the record at 55, the immigration judge sort of rhetorically queries, why could he, not he, being the applicant, why could the applicant simply not answer truthfully about his travel in Mexico in 2009? And then the immigration judge would have simply weighed that. And in the record at page 127 in his colloquy with counsel for Petitioner, the immigration judge notes that he has granted applications for people who have converted to Christianity once they have arrived in America. So not religious persecution in China. So we have an immigration judge that is simply asking for an unfair presentation of the evidence, but that is not the claim that Petitioner chose to present. Petitioner's initial claim was purely one of religious persecution. And the reason that his passport and his travel arrangements become material in this case is because Petitioner by his own choice linked those to his own claim. And so at the record at 102 we see this question, why did you get that passport, the 2013 passport? His answer, because I was persecuted for religious reasons. And so once he links the two, then when he left China becomes material. How he left China becomes material. And the fact that he then, it turns out he's been concealing a prior trip to Mexico in 2009 cannot now be reconciled with his initial assertion that he in fact left in 2013. And so under Xie Xuelin neither of those versions is compelled. Substantial evidence supports the agency's adverse credibility determination. And any failure in the factual predicate has to be laid at Petitioner's feet. This was his claim. Had he done as the immigration judge explicitly would have liked, which is to just simply say oh, as a matter of fact I was in Mexico in 2009, then the immigration judge would have parsed the relevance, if any of that, travel to the events of 2013. Because under the convoluted timeline presented to this court, the religious persecution did not occur until after he acquired his 2013 passport. So where the record evidence doesn't compel either version of events, travel in 2013 to flee, travel in 2013 based on a tourism passport which was conveniently served as a means of exodus, or travel in 2009 for tourism, the record, the substantial evidence supports the agency's adverse credibility determination. Turning to the due process claim, the respondent believes that under the Stevens case, the issue, the due process issue has not been raised with sufficient specificity and the court should deny that claim for lack of jurisdiction based on the mandatory judicially created exhaustion doctrine in this circuit. So regardless of the actual merit of that due process claim, the respondent believes that it is not necessary to even reach that because this claim appears for the first time in this case before this court. And so the board is deprived of a full opportunity, in the words of Theodoropoulos, to either apply . . . There was an objection to the question, I gather. Yes, Your Honor, there was. The objection was based on facts not in evidence and before the board, the sole legal authority . . . Was there a request to see the record? There was not. And in the record, there is, significantly, there is a colloquy between the immigration judge and the counsel where the immigration judge, at the conclusion of the applicant's testimony, identifies his concern about credibility based on the shifting story about . . . Was there a piece of paper there in the courtroom? The government's record? Evidently. The government counsel was looking at a piece of paper because the immigration judge asked government counsel whether there were any other travel records outside of the 2009 travel to Mexico and the government responded in the negative. But at no point, at no point, did petitioner's counsel ask to see the document or raise an argument based on the document staying in the government counsel's file. And before the board, before the board, the petitioner presented a three . . . The petitioner's counsel could have asked for it to be submitted, I suppose. Yes, Your Honor. They certainly could have. They could have asked for it to be marked for identification purposes and submitted in his record, but they did not. And instead, before the board, petitioner chose to present a three-sentence argument which begins and ends with, you know, the objection should have been sustained based on . . . And the only, the sole citation there was Federal Rule of Evidence 611A. So we have a narrow challenge to just the immigration judge's ruling based solely on the Federal Rule of Evidence, which petitioner now concedes does not apply. And so then to shift to substitute for a failed rationale the entirety of due process which, you know, in contrast to a single Federal Rule of Evidence, arguably is the broadest, one of the broadest legal umbrellas under which a claim can be brought because it touches every aspect of an immigration court hearing. I gather whatever the record is, it's not in our record. That's correct, Your Honor. It is not. But to substitute an entirely different legal rationale bears a striking correspondence to the issues presented in the Stevenez case where the court was presented with an exhausted issue about changed country additions but then asked to analyze a relocation finding which had not been presented to the board. And the Stevenez panel took some pains to note that despite the fact that both issues drew on common facts, the common factual element was not controlling it. Instead it was that they were separate legal authorities and independently dispositive. Which is almost the same here. Instead of a Federal Rule of Evidence that doesn't apply, we have now a request for this court to analyze under due process whether or not an entire series of questions violates fundamental notions of fairness whereas the board was never presented with the opportunity and the board's decision on this point cites the board's authority is matter of D.R. at page 458 that is confined, although matter of D.R. dealt with due process issues as well the pinpoint citation of 458 is ... We have your argument. Thank you. Thank you, Your Honor. We'll hear the rebuttal. All right. Responding to the government counsel's argument, I do direct Your Honor to page 54 where the immigration judge said, quote, unquote, I believe the motivation for that was to cut off an important area of inquiry as to what his motivation was to leave China, unquote. So I don't think it's really simply a question of, oh, you are inconsistent, bingo, that's it. It appears that the primary source of the immigration judge's problem with the testimony he received was based upon the suspicion that he was trying to hide a prior attempt to enter the United States. But at the end of ... At the conclusion of the individual, it's still a suspicion. Even after all the questions are asked, it's still based entirely on speculation as the respondent testified it was tourism and despite the fact that the government had a record that he had left China on a previous occasion, they don't have any other record saying that he attempted to enter the United States or that was for any reason other than he said he did. Now, I do note that the government has made a large issue about issue exhaustion. However, if you look at the board's decision, the board's decision said that the questioning was ... They're saying that the questioning was fair. So really the argument responds to what it is that the board is saying regarding that the fact that the judges have the authority to control the scope of the evidence hearing, which is also the same thing 611A says, and also says that he did ... They say he did not admit any record into evidence, which is actually the entire problem with the case, that he didn't admit something into evidence. Mr. Linds' counsel asked to see the document for it to be submitted. Probably not, because the record probably confirmed what the government was saying. And Mr. Linds' counsel doesn't have the power to force him to submit documents either. He didn't even ask. The question was, did you ask? Could I ask if I don't have the power to force him to submit the document? Did you ask? No, Judge. It's simple. It ends the process. You get a question, you answer it, and you go on. My time's expired, so I can't ... One reserved decision. Thank you.